**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

ALWANI KUMAR,

        Plaintiff,

        v.

JOHNSON & JOHNSON, INC., et al.,

        Defendants.

Civil Action No. 12-779 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

Plaintiff Alwani Kumar ("Plaintiff"), a female of South Asian descent, alleges that she suffered unlawful discrimination and other wrongs by her former employers, Defendants Johnson & Johnson; Ethicon, Inc. ("Ethicon"); and Johnson & Johnson Consumer Companies, Inc. ("J & J Consumer") (collectively "Defendants"). In this action, Plaintiff asserts claims for discrimination and unequal pay against Defendants under Title VII of the 1964 Civil Rights Act ("Title VII"), the New Jersey Law Against Discrimination ("NJLAD"), the Equal Pay Act ("EPA"), and the Family Medical Leave Act ("FMLA").

Now before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims. (ECF No. 46.) Plaintiff filed opposition to the motion (ECF No. 53), and Defendants replied (ECF No. 59). The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Defendants' motion is granted in part and denied in part.

## I.   <u>Background</u>[1]

Unless otherwise indicated, the following material facts are undisputed. Additional material facts may be discussed elsewhere in this opinion in context.

### A. Plaintiff's Employment at Ethicon

Plaintiff began working for Johnson & Johnson as an intern from November 2001 until April 2003. (Defs.' Resp. to Pl.'s Counterstatement of Facts ("CSOF") ¶¶ 4, 15, ECF No. 59-2.) In April 2003, Plaintiff began working at Ethicon as a Human Resources Specialist. (Pl.'s Resp. to Defs.' Statement of Material Undisputed Facts ("SOF") ¶ 10, ECF No. 53-1; CSOF ¶ 42.) Ethicon is a member of the Johnson & Johnson Family of Companies. (SOF ¶ 5.) Plaintiff claims that as early as 2005, she began complaining about being paid less than other human resources professionals at Ethicon. (CSOF ¶ 46.) In March 2006, Plaintiff was promoted to Human

---

[1] Pursuant to Local Rule 56.1, the party filing a motion for summary judgment must file a statement of material facts not in dispute, and an opponent may file a supplemental statement of undisputed material facts to substantiate the factual basis for opposition. In addition, each party shall furnish a statement responsive to the other's addressing each paragraph and indicating agreement or disagreement, and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted with the motion. Any material fact not disputed "shall be deemed undisputed" for purposes of deciding the motion. Therefore, the court will consider any statement of fact which was not denied by the opposing party with a citation to the record as undisputed for purposes of this summary judgment motion. Additionally, replies to opponent's response to a movant's statement of undisputed material facts are not permitted by Local Rule 56.1, and Defendants' submission (ECF No. 59-1) will be disregarded by this Court.

The purpose of what is now often referred to in this District as the "56.1 statement" is to narrow the issues before the District Court, not to increase the burden before it. To that end, the parties' statements should be clear and unambiguous in specifying the disputed and undisputed issues and facts. Moreover, the mere fact that an issue is raised in a 56.1 statement or that an inference could be drawn from a party's statement will not substitute for fully and completely briefing the issue. Here, the parties' submissions together contain over five hundred and fifty separately numbered paragraphs of "material facts." The parties have not narrowed the issues before this Court, and have left it to this Court to sift through the parties' submissions in search of undisputed material facts. In the interests of fairness and judicial economy, the Court has made every effort to decipher which aspects of the parties' 56.1 statements are, in fact, disputed, and which are agreed upon.

Resources Manager.  (SOF ¶ 13; CSOF ¶ 45.)   In 2006 and 2007, Plaintiff questioned her supervisors regarding her rate of pay in comparison to her peers and, on both occasions, received increases in her salary.  (SOF ¶¶ 15-19.)

In March 2008, Plaintiff was promoted and transferred into Commercial Operations at Ethicon.  (CSOF ¶ 94.)  Plaintiff asserts that as part of her objectives, in 2008, her then supervisor asked her to "benchmark" what other Johnson & Johnson operating companies were doing in terms of management development.  (SOF ¶ 37; CSOF ¶ 101.)  As part of this "benchmark" Plaintiff identified four individuals, three of whom were men, at different operating companies whom Plaintiff claims "were similar in terms of our responsibilities. . . [but she] can't speak to everything being the same."  (SOF ¶ 39.)  Plaintiff created a spreadsheet with information pertaining to some of these individuals in conjunction with her "benchmark" assignment.  (*Id.* ¶ 52; CSOF ¶ 106.)

In February 2009, Plaintiff announced to her co-workers and supervisors at Ethicon that she was pregnant.  (CSOF ¶ 122.)  In March 2009, Thomas Eagan became Plaintiff's temporary supervisor.  (SOF ¶ 55.)  On June 22, 2009, Plaintiff went on maternity leave.  (*Id.* ¶ 58; CSOF ¶ 158.)  In August 2009, while Plaintiff remained out on maternity leave, Frederick Virgin replaced Eagan as Plaintiff's supervisor.  (SOF ¶ 61.)

On January 18, 2010, Plaintiff returned to Ethicon.  (*Id.* ¶ 62; CSOF ¶ 160.)  Upon her return in January 2010, Virgin told Plaintiff that her position was leveled to an "M-1" position within Johnson & Johnson's new scale.  (SOF ¶ 74; CSOF ¶¶ 180-181.)  Additionally, Virgin instituted a number of changes throughout his department after Plaintiff's return which affected several employees.  (SOF ¶ 66.)  Plaintiff asserts that prior to taking FMLA leave her position had "direct responsibility for implementing the strategy utilized in developing the Management Development program."  (CSOF ¶ 176.)  After her return, Plaintiff claims she was not immediately

aware that her job duties had changed. (*Id.* ¶ 219.) Plaintiff argues that after her leave: (1) her job became more administrative than strategic; (2) her responsibility of identifying and developing competency models for Divisional Manager development objectives was taken away; (3) she was no longer permitted to give input or coach employees; (4) she was no longer asked for her assessment or feedback regarding management development program participants; and (5) she was no longer asked to create training webinars or draft educational guidelines. (*Id.* ¶¶ 221-225.)

On February 10, 2010, Eagan, Plaintiff's previous supervisor, released Plaintiff's 2009 Performance Evaluation. (SOF ¶ 75.) Plaintiff's "2009 Performance Evaluation states in five separate places that her 'extended FMLA leave impeded the accomplishment' of established objectives." (CSOF ¶ 206.) "The 2009 Perform[ance] Eval[uation] concluded with the comment that the role requires dedicated full time resource to work closely with the business and units and in-field with the sales management teams." (*Id.* ¶ 207.) In relation to Plaintiff's 2009 Performance Evaluation, Eagan also had input in a Power Point slide that recommended lowering Plaintiff's objective rating from her 2008 score of "5" to a "4/5." (*Id.* ¶ 210.) Next to this recommendation, the Power Point slide had the words "Family Medical Leave Absence." (*Id.*) Additionally, under "Misses/Opportunities for Development," the Power Point slide read: "key deadline missed, leave of absence began." (*Id.* ¶ 211.) Plaintiff raised her concerns regarding Eagan's comments in her 2009 Performance Evaluation with Virgin, and a revised performance review was issued on February 26, 2009. (SOF ¶¶ 76-77; CSOF ¶ 216.)

On April 28, 2010, Plaintiff met with Virgin, and others, to discuss a newly created Director position in Commercial Operations. (SOF ¶ 82.) Plaintiff would now report to the person hired to fill this newly created Director position. (CSOF ¶ 237.) Edward Vitt was selected for the role. (SOF ¶ 88.) Plaintiff and Defendants dispute whether this new position "included the majority of

job duties [Plaintiff] ha[d] been performing before she went out on FMLA leave." (*Id.* ¶ 232.) Plaintiff claims that before leaving Ethicon she created a document detailing "all of Vitt's future job responsibilities and goals for the first three months of Vitt's employment"—all of which were job duties that had been hers prior to her FMLA leave. (CSOF ¶ 227.)

In June or July 2010, Plaintiff received her succession score, which was 2 out of 4—which means an employee has the "potential to be successful at their current organizational level." (SOF ¶¶ 78, 80.) This score meant Plaintiff was not promotable to the next significant level. (CSOF ¶ 273.) Plaintiff asserts that when she questioned Virgin as to why she received a "2," he informed her that other leaders reported to him that she was not "reliable." (*Id.* ¶ 274.)

Plaintiff used Johnson & Johnson's intranet system to look for alternative positions with Johnson & Johnson in the summer of 2010. (*Id.* ¶ 34.) Plaintiff applied for a Manager, Human Resources position at J & J Consumer. (SOF ¶ 97.) Plaintiff interviewed for the position and received an offer in August 2010. (*Id.* ¶ 98.) Plaintiff's position at Ethicon was never filled after she transferred to J & J Consumer. (CSOF ¶ 244.)

### B. Plaintiff's Employment at J & J Consumer

On November 15, 2010, Plaintiff transferred from Ethicon to J & J Consumer. (SOF ¶ 91.) Like Ethicon, J & J Consumer is a member of the Johnson & Johnson Family of Companies. (*Id.* ¶ 6.) Plaintiff characterized her decision to leave Ethicon and accept the position at J & J Consumer as a result of "unfortunate circumstances." (*Id.* ¶ 118.) Plaintiff's salary increased when she began working at J & J Consumer. (*Id.* ¶¶ 108, 116.) Plaintiff's new position at J & J Consumer involved working on talent development. (*Id.* ¶ 117.)

Plaintiff alleges that, in January, Virgin informed her that her 2010 year-end discretionary bonus would be cut from twenty percent to eleven percent. (*Id.* ¶ 92; CSOF ¶ 313.) Plaintiff

claims that she was not aware that her pay grade only allowed her to be targeted for a fifteen percent bonus. (CSOF ¶ 315.) Plaintiff asserts the only reason Defendants provided for the reduction in her bonus was that there was not enough money to compensate "other high potential performers." (*Id.* ¶ 314.)

In March 2011, Plaintiff met with Anthony Carter, Vice President of Diversity and Inclusion, who advised her to lodge her complaints of discrimination at Ethicon with Johnson & Johnson's Common Ground program. (*Id.* ¶¶ 318, 320.) Common Ground is an informal dispute resolution program available to employees working within the Johnson & Johnson family of companies that seeks to resolve employment-related disputes early, preserve working relationships, and promote a productive working environment for everyone. (SOF ¶ 139.)

On April 4, 2011, Plaintiff met with Helaine Catalano, Vice President of Human Resources at J & J Consumer, who told Plaintiff that, as a result of restructuring, her job duties would be substantially changing. (*Id.* ¶ 125; CSOF ¶ 351.) According to Plaintiff, Catalano told her "she wasn't sure what my job would look like, but it would no longer be focused on talent." (SOF ¶ 126.)

On April 5, 2011, one day after being informed her job duties would be changing, Plaintiff met with Richard Martemucci, Director of Common Ground, for the first time. (*Id.* ¶ 142.) Plaintiff asserts that she complained to Martemucci about "pregnancy discrimination and violations of the FMLA." (CSOF ¶ 324.) Defendants assert that Martemucci's notes "do not reflect that plaintiff complained to him about 'pregnancy discrimination and violations of the FMLA.'" (*Id.*) Martemucci testified that during the course of his investigation into Plaintiff's complaint he did not have any conversations with anyone from J & J Consumer. (SOF ¶ 149.) Catalano also testified that she never spoke with Martemucci at Common Ground about Plaintiff

or Plaintiff's discrimination complaint. (*Id.* ¶ 151.) Martemucci concluded that Plaintiff had not been discriminated against. (CSOF ¶ 349.)

On April 21, 2011, Catalano met with Plaintiff regarding an available Human Resources generalist position, at the same pay band that Plaintiff could remain following the restructuring. (SOF ¶¶ 129-131.) Plaintiff asked Catalano if she could work part time. (CSOF ¶ 165.) Plaintiff did not accept this job. (SOF ¶ 133.) On May 23, 2011, Plaintiff received a Separation Agreement. (*Id.* ¶ 136.) Plaintiff now claims in her declaration in support of her opposition that "she never refused to continue working in the H.R. role reporting to Catalano while looking for alternative talent-focused H.R. positions with J & J." (CSOF ¶ 373.) Plaintiff requested time to seek alternative employment within Johnson & Johnson in addition to the six weeks provided to her in the May 23, 2011 Separation Agreement. (*Id.* ¶ 376.) The amount of time an employee was given to look for alternative work after job restructuring varied throughout Johnson & Johnson. (*Id.* ¶ 377.) On May 26, 2011, three days after receiving her Separation Agreement, Plaintiff met with Martemucci to raise the issue of her termination from J & J Consumer. (*Id.* ¶ 379.) Plaintiff's last day at J & J Consumer was July 1, 2011. (*Id.* ¶ 372.)

### C. Procedural History

On December 23, 2011, Plaintiff filed a Charge of Discrimination with the EEOC. (SOF ¶ 7.) On February 9, 2012, Plaintiff filed the initial Complaint in this matter, and filed an Amended Complaint on September 18, 2012. (Compl., ECF No. 1; Am. Compl., ECF No. 26.) In her Amended Complaint, Plaintiff does not set forth her claims in separately numbered counts, but instead includes all of her claims under the heading "LEGAL CLAIMS." (*Id.* ¶¶ 72-83.) Plaintiff asserts claims against Defendants for: national origin discrimination in violation of Title VII and the NJLAD (*Id.* ¶ 74); gender discrimination in violation of the EPA, Title VII, and the NJLAD

(*Id.* ¶¶ 73, 77, 78, 79); interference and retaliation claims under the FMLA (*Id.* ¶¶ 75, 76, 78, 79);

and retaliation for complaining about gender discrimination in violation of Title VII, the NJLAD,

and the FMLA. (*Id.* ¶ 80). Defendants now move for summary judgment on all claims.

## II.      **Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material

fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue

is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher

v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).  Disputes over irrelevant or unnecessary facts

will not preclude a court from granting summary judgment.   The party moving for summary

judgment has the initial burden of proving an absence of a genuine issue of material fact. *Celotex

Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

If the non-moving party bears the burden of proof at trial, the movant may discharge its

burden by pointing to an absence of evidence necessary to support the non-movant's claim. *Id.* at

325.   Alternatively, a moving party may submit affirmative evidence that negates a material

element of the non-moving party's claim. *Id.*  If the movant brings such affirmative evidence, or

makes a showing that the non-movant lacks evidence essential to its claim, the burden shifts to the

non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed.

R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  The burden of persuasion, however, rests ultimately on

the non-moving party to establish each element necessary to succeed on the claims on which it

bears the burden of proof at trial. *Id.* at 322.

To decide whether a genuine issue of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423. However, on a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Absent a genuine issue for trial, summary judgment as a matter of law is proper.

### III.   Analysis

#### A.  Statute of Limitations

##### 1.  *Title VII Claims*

Title VII prohibits employers from discriminating against employees on the basis of race, color, sex, religion, or national origin. *See* 42 U.S.C. § 2000e–2. An employee bringing charges of employment discrimination under Title VII must file charges with the Equal Employment Opportunity Commission (EEOC) "within 300 days after the alleged unlawful employment practice occurred." *Teklewolde v. Onkyo USA Corp.*, No. 06-1097, 2006 WL 3779755, at *3 (D.N.J. Dec. 20, 2006) (internal quotations omitted). "A cause of action under Title VII accrues when the employee receives notice of the unlawful practice." *Smith v. Amerada Hess Corp.*, No. 05-560, 2005 WL 2897459, at *2 (D.N.J. Oct. 31, 2005) (citing *Coleman v. Albertson's, Inc.*, No. 04-4090, 2005 WL 1041190, at *1 (E.D. Pa. May 4, 2005)). Failure to file within the applicable period bars the claim. *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123-24 (1988); *Masco v. United Airlines*, 574 F.2d 1127, 1128-29 (3d Cir. 1978). Thus, all discriminatory acts that are alleged to have occurred more than 300 days prior to the filing of the EEOC charge are time-barred.

Plaintiff filed an EEOC charge on December 23, 2011; 300 days prior was February 26, 2011. Plaintiff's claims of discrimination arose during the time she was employed by Defendants, November 2001 through May 23, 2011. Specifically, Plaintiff left her employment with Ethicon on November 15, 2010. Plaintiff admits in her opposition that she does not have a cause of action under Title VII for any actions that occurred before February 26, 2011. (Pl.'s Opp'n 21.) Accordingly, all of Plaintiff's claims of discrimination in violation of Title VII prior to February 26, 2011 are dismissed as time-barred. Plaintiff's only surviving claim under Title VII is for retaliation for denying continued employment or a temporary position to Plaintiff with J & J Consumer in July 2011.

### 2. NJLAD, EPA, and FMLA Claims

The New Jersey Supreme Court applies a two-year statute of limitations for violations of the NJLAD. *Serrano v. Marcal Paper Mills, LLC*, No. 11-03501, 2012 WL 266424, at *4 (D.N.J. Jan. 30, 2012) (citing *Montells v. Haynes*, 133 N.J. 282, 292 (1993)). Additionally, a two year statute of limitations applies to claims both under the EPA and the FMLA. *See* 29 U.S.C. § 255(a); 29 U.S.C. § 2617(c)(1). Plaintiff filed her initial Complaint in this action on February 9, 2012. Plaintiff admits in her opposition that a two-year statute of limitations applies to her NJLAD, EPA, and FMLA claims. (Pl.'s Opp'n. 8, 21.) Accordingly, any claims for discrimination under the NJLAD, the EPA[2], or the FMLA that arose prior to February 9, 2010 are untimely.[3]

---

[2] All claims of discrimination by Plaintiff prior to February 9, 2010 are time-barred with the exception of pay disparity claims as addressed *supra. See* III. D.

[3] In her opposition, Plaintiff does not argue that Defendants' actions were a "continuing violation" under any statute, but instead insists that the discrimination claims as to her demotion and change of job duties after her FMLA leave are not time barred because Plaintiff "was not on notice that this action was discriminatory" until after February 9, 2010. (Pl.'s Opp'n 9.) In employment discrimination suits, however, the proper focus of the statute of limitations inquiry "is on the time of the *discriminatory* act, not the point at which the *consequences* of the act become painful."

### B.  Johnson & Johnson as Employer

As a preliminary matter, Defendants argue that all claims against Johnson & Johnson must be dismissed as Plaintiff was never employed by Johnson & Johnson. (Defs.' Br. 38.) Defendants' argument is unavailing, however, as Defendants only cited to case law holding that "independent contractors" are not considered "employees" under Title VII and the NJLAD. *Id.* at 38-39 (citing *Pukowsky v. Caruso*, 312 N.J. Super. 171, 178-80 (App. Div. 1998); *DaBronzo v. Roche Vitamins, Inc.*, 232 F. Supp. 2d 306, 313-14 (D.N.J. 2002)).  Defendants make no other legal arguments regarding Johnson & Johnson's status as an employer of Plaintiff, and Defendants do not assert that Plaintiff was an independent contractor.  Instead, Defendants state only that "Ethicon and [J & J Consumer] are distinct legal entities." (Defs.' Br. 39.) "[T]the moving party has the burden initially of identifying that evidence that demonstrates the absence of a genuine issue of material fact." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).  As such, Defendants have not met their burden.

### C.  National Origin Based Discrimination Claims

In her Amended Complaint, Plaintiff alleges "that Defendants discriminated against her by paying her less than similarly situated male and/or non-East Asian employees in violation of Title VII and the NJLAD." (Am. Compl. ¶ 74.)  Plaintiff does not assert any other basis for discrimination due to national origin in her Amended Complaint.  Now, in her Opposition Brief, Plaintiff attempts to argue discrimination on the basis of national origin, not with respect to being

---

*Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (emphasis in original).  Plaintiff acknowledges that she was told prior to February 9, 2010 that she was "demoted" to an "M-1" manager position. (Pl.'s Opp'n. 8; SOF ¶ 74.)  In regards to the change of job duties, however, there is a dispute of fact as to when Plaintiff knew or should have known there was a change to her job duties after returning to Ethicon in January 2010.  (SOF ¶ 64; CSOF ¶¶ 219-227.)  Thus, only Plaintiff's discrimination claim in relation to her "demotion" is time barred.

paid less, but in relation to being denied a promotion in 2010.  (Pl.'s Opp'n 23-24.)  "Because Plaintiff 'may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment,' this Court will not credit these new claims of retaliation."  *Holland v. Macerich*, No. 09-914, 2011 WL 6934969, at *3 (D.N.J. Dec. 29, 2011) *aff'd sub nom.*, *Holland v. Simon Prop. Grp., Inc.*, 495 F. App'x 270 (3d Cir. 2012) (citing *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008)).  Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's claims for national original discrimination in violation of Title VII and the NJLAD.

### D.  Wage Discrimination Claims[4]

In her Amended Complaint, Plaintiff alleges that "Defendants discriminated against her on the basis of her gender by paying her less than similarly situated male employees in violation of the EPA[,] . . . . Title VII and the NJLAD."  (Am. Compl. ¶¶ 73-74.)  The New Jersey Supreme Court has created a two-part test for analyzing claims of disparate pay under the NJLAD. *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 109-10 (1990).   First, the claim must be analyzed under the standards and methodology of the EPA.  *Id.*  If a plaintiff fails to establish a *prima facie*

---

[4] Defendants assert that Plaintiff's pay disparity claim against Ethicon is only for the period of February 10, 2010 through November 15, 2010.  (Defs.' Reply 2.)  Plaintiff does not address the statute of limitations issue in regards to her pay disparity claims in her opposition.  However, that does not mean those claims are time barred.  Most courts "treat pay discrimination claims as continuing violations."  *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 843 (3d Cir. 1992) (citations omitted).  "Sex-based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act . . . . To hold otherwise would permit perpetual wage discrimination by an employer whose violation of the Equal Pay Act had already lasted without attack for over two years."  *Id.*  Thus, "if the alleged discriminatory conduct is a 'continuing violation,' the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first."  *Id.* at 844.  Accordingly, this Court disagrees with Defendants' assertion and because Plaintiff continued working for Ethicon until November 2010, her Complaint was timely filed as to her wage discrimination claims.  Nevertheless, Plaintiff's wage discrimination claims fail for the reasons set forth herein.

case under EPA standards, she has a "second chance" if she can show that the work is "similar" under Title VII standards. *Id.* at 101. If a plaintiff fails to establish a *prima facie* case of discrimination under the NJLAD and Title VII, however, "then her EPA claim also fails because the burden to prove a *prima facie* case under the NJLAD is substantially less onerous than the burden to prove a *prima facie* case under the EPA." *Id.* at 299, n.17.

To maintain a pay disparity claim under Title VII, "a plaintiff must demonstrate that 'employees . . . were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions.'" *Noel v. Boeing Co.*, 622 F.3d 266, 274 (3d Cir. 2010) (quoting *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000)). "Different positions with different qualifications, even if they are superficially comparable, are not 'similarly situated' for purposes of establishing a *prima facie* wage discrimination claim." *Bell v. Lockheed Martin Corp.*, No. 08-6292, 2014 WL 2920503, at *25 (D.N.J. June 27, 2014) (quoting *Nagle v. RMA, Risk Mgmt. Ass'n*, 513 F. Supp. 2d 383, 388-89 (E.D. Pa. 2007)). Defendants argue that Plaintiff cannot identify another employee who was paid more than her for performing equal or similar work to establish her *prima facie* case of wage discrimination.

As Plaintiff bears the ultimate burden of proof at trial, on a summary judgment motion she must "make a showing sufficient to establish the existence of an element essential to [her] case." *Celotex Corp.*, 477 U.S. at 322. To establish her *prima facie* case, Plaintiff needs to show that a male employee with the same or similar job was paid more for equal work. A plaintiff's wage discrimination claim "fails where she compares [her] treatment to another employee but cannot show that the other employee was similarly situated." *Nagle*, 513 F. Supp. 2d at 389; *see also Bell*, 2014 WL 2920503 at *25 (holding a plaintiff's own opinion and survey as to others' "skill sets" not enough evidence on summary judgment to establish a *prima facie* case of wage

discrimination).   Here, Plaintiff has not established that her job duties at Ethicon were "similar" to the duties of any male employee receiving higher compensation.

Plaintiff has identified five male employees who she claims were similarly situated to her with respect to her wage discrimination claim: Vitt, Lucek, Johnson, Broadhead, and Philopovich. (Pl.'s Opp'n 25-26.)  Plaintiff asserts that Vitt "took over her job duties and was promoted to the Director Position to which [Plaintiff] was slotted before becoming pregnant and going out on FMLA leave." (*Id.* at 25.)  This assertion does not establish that Vitt was in a "similar" position or held "similar" duties, but only that Vitt received a promotion, to a higher position, that Plaintiff alleges she was "slotted" for.  This is insufficient evidence to establish Plaintiff's *prima facie* case of wage discrimination.

Next, Plaintiff compares herself with Lucek, Johnson, Broadhead, and Philopovich. Plaintiff indicates that as part of a "benchmark" assignment in 2008 and 2009, she surveyed the job duties "of other employees working in the area of management development in other J & J sales operations departments." (CSOF ¶ 101.)  In furtherance of this "benchmark" assignment, Plaintiff compiled a chart in 2009 "comparing her job duties to five other employees, from five different operating companies." (*Id.* ¶ 106.)  Plaintiff asserts that this "chart" demonstrates that she performed "substantially equal" work to that of Broadhead, Lucek, and Johnson. (*Id.* ¶ 107.)

The only evidence in the record that Plaintiff points to establishing that the jobs entail "similar" work is her own affidavit and the chart she prepared in 2009.  Plaintiff's chart lists two of the male employees she seeks to compare herself with: Lucek and Johnson. (Cert. of Francis Dee, Ex. G, ECF No. 46-7.)  Plaintiff additionally admits that both Lucek and Johnson held director positions while Plaintiff was in a manager position.  (CSOF ¶ 108.)  Plaintiff provides no other basis as to why she, Lucek, Johnson, Broadhead, and Philopovich were "similarly situated."  While

Plaintiff asserts that each performed similar job duties of management development work, Plaintiff does not provide any evidentiary support for her contentions. *See also Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087 (3d Cir. 1996) (affirming district court's grant of summary judgment as to unequal pay claims where plaintiff "did not provide any evidence to demonstrate that the jobs performed by the white employees were the same or that the employees had similar credentials"). Plaintiff's own opinion that their jobs entailed "substantially equal" work does not establish evidence that the positions were of equal work, nor does her reference to her otherwise unexplained chart.

Defendants have discharged their burden on summary judgment by pointing to the absence of evidence necessary to support Plaintiff's wage discrimination claim. Plaintiff has not set forth specific facts to support her *prima facie* case of wage discrimination showing that there is a genuine issue for trial. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's wage discrimination claims under Title VII, the NJLAD, and the EPA.

### E.  Gender Based Discrimination Claims under Title VII and the NJLAD

The Court now turns to Plaintiff's allegations of gender based discrimination under Title VII and the NJLAD. In her Amended Complaint, Plaintiff asserts "Defendants discriminated against her by relying on outdated stereotypes about pregnant women and mothers in order to demote her and replace her job duties and deny her an increase in pay and a title promotion." (Am. Compl. ¶ 77.) Plaintiff argues that her "gender discrimination claims are intertwined with her causes of action under the FMLA because perceptions of her as a female employee who took time off to have a baby are closely aligned and interrelated to the same biases that relate to Defendants' views that [Plaintiff] was less reliable and less promotable after having a baby." (Pl.'s Opp'n 22.)

The same analysis applies to Title VII and the NJLAD discrimination claims.  *See Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999) ("Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim.").  Gender discrimination claims under Title VII and the NJLAD may be established either by the presentation of direct evidence of discrimination or from evidence which creates an inference of discrimination.  *Kohn v. AT & T Corp.*, 58 F. Supp. 2d 393, 405-06 (D.N.J. 1999); *Bravo v. Union Cnty.*, No. 12-2848, 2013 WL 2285780, at *6 (D.N.J. May 23, 2013).

### 1.   *Direct Evidence of Gender Discrimination*

Plaintiff asserts she has direct evidence "of bias based on the remarks of Catalano (her supervisor from April 5th to May 23rd[,] 2011) and Ehret about their views of a woman who even ask [sic] to work part-time, much less do so." (Pl.'s Opp'n 22.)  Plaintiff claims that these remarks "*implied* that [Plaintiff] should not be considered for a part time position, after her Talent Specialist job was eliminated" at J & J Consumer. (*Id.*) (emphasis added).  Furthermore, Plaintiff argues that these comments "are probative of a culture that considers a woman who takes time to be with her child less committed and interested in work." (*Id.* at 23.)

Direct evidence of retaliation is demonstrated through the burden shifting framework set forth by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 279 (1989).  "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of the fact in issue *without inference or presumption.*  Evidence is not direct where the trier of fact must *infer* the discrimination . . . from an employer's remarks." *Kohn*, 58 F. Supp. 2d at 405-06 (citations omitted) (emphasis in original).  One form of direct evidence is "statements of a person involved in the decision-making process that reflect a discriminatory or retaliatory animus of the type complained of in the suit, even if the statements are not made at the same time as the adverse

employment decision, and thus constitute only circumstantial evidence that an impermissible motive substantially motivated the decision." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002) (citations omitted).   On the other hand, the Third Circuit has noted that "statements by nondecisionmakers, statements by decisionmakers unrelated to the contested employment decision, and other stray remarks" do not constitute direct evidence. *Id.* at 338 n.2 (citations omitted).

The remarks Plaintiff directs this Court's attention to are unavailing to demonstrate direct evidence of discrimination, as Plaintiff herself admits one must *imply* from the various remarks that Plaintiff was discriminated against based on her gender and for taking time off to have a baby. Additionally, most of the comments Plaintiff relies upon as direct evidence were made by non-decision makers and did not relate to any adverse employment action against Plaintiff.   Even the comments made by Plaintiff's supervisor were unrelated to any employment decision or about Plaintiff specifically. Furthermore, Plaintiff has not cited to any legal authority that such remarks should constitute direct evidence in a gender discrimination case.   Thus, these remarks do not constitute direct evidence.

### 2. *Circumstantial Evidence of Gender Discrimination*

Where a plaintiff has not presented direct evidence of discrimination, discrimination claims are construed pursuant to the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   At the first stage, the plaintiff bears the burden of establishing a *prima facie* claim of employment discrimination. *See McDonnell Douglas*, 411 U.S. at 802-03. At the second stage, the employer must produce evidence that, if believed, would establish a legitimate, nondiscriminatory explanation for its treatment of the plaintiff. *See id.* at 804-05.   If the employer meets this burden, the plaintiff must then submit evidence sufficient to convince a

reasonable factfinder that the employer's explanation is a pretext for intentional discrimination or retaliation. *See id.* To survive a summary judgment motion, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (internal quotations omitted). In other words, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765 (internal quotations omitted) (emphasis omitted).

a.   Plaintiff's *Prima Facie* Case

To establish a *prima face* claim of gender discrimination in violation of Title VII and the NJLAD, Plaintiff must come forward with evidence to establish the following four elements: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he sought to attain or retain; (3) [s]he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). As to her gender discrimination claim, Plaintiff asserts that she

> (1) is a woman who became pregnant, took maternity leave and then was, during the relevant period of time between January 2010 and July 2011, the mother of a very young child; (2) was qualified for the jobs she performed before and after her FMLA leave . . .; (3) experienced numerous adverse actions taken against her because of these protected characteristics; and (4) these adverse actions took place under circumstances that give rise to an inference of discrimination.

(Pl.'s Opp'n 21-22.)

In support of the third element of her *prima facie* case, Plaintiff relies on seven[5] instances of "adverse conduct." Specifically, Plaintiff maintains that Defendants violated her rights by: (1) changing her job duties after her FMLA leave; (2) penalizing her in her 2009 Performance Evaluation; (3) layering another employee's job over hers; (4) downgrading her potential rating in 2010; (5) reducing her bonus in 2010; (6) denying her continued employment or a temporary position; and (7) constructive discharge.[6] (Pl.'s Opp'n. 7-14, 30-40.)

Defendants argue that Plaintiff cannot establish her *prima facie* case as she has not suffered an "adverse employment action." In response, Plaintiff does not develop her gender discrimination claim but merely relies on the legal arguments used to support her FMLA retaliation claim. Furthermore, Plaintiff does not cite any case law that equates instances of "adverse conduct" to an "adverse employment action." Notably, the Supreme Court in *Burlington North* held there is a critical distinction between the "adverse action" element of a retaliation claim and the "adverse employment action" element of a discrimination claim. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63-65 (2006); *see also McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 434-35 (D.N.J. 2009). An adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *See Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). "[I]n the retaliation context, an employment action that is 'materially adverse' is considered more broadly" and "[t]he threshold

---

[5] Plaintiff additionally asserts that Defendants discriminated against her by demoting her after her FMLA leave. This claim, however, has already been dismissed, *see infra* III. A., as time-barred under both Title VII and the NJLAD. Additionally, all the instances of adverse conduct Plaintiff alleges are time-barred under Title VII except: denying her continued employment or a temporary position with J & J Consumer.
[6] Plaintiff also lists "retaliation for lodging complaints" as adverse conduct. However, she does not address how it relates to her gender discrimination claims and it is addressed separately as its own claim. *See* III. G.

is lower than the standard for 'adverse' [employment] action for discrimination claims." *McKinnon*, 642 F. Supp. 2d at 435 (citations omitted). As such, there is a higher standard to establish an adverse employment action in the context of a discrimination claim. Here, none of Plaintiff's alleged instances of "adverse conduct" amount of an adverse employment action in the context of a discrimination claim.[7]

Additionally, Plaintiff alleges she was constructively discharged from Ethicon. To establish a constructive discharge claim, a plaintiff is required to show the employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Anastasia v. Cushman Wakefield*, 455 F. App'x 236, 241 (3d Cir. 2011). "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign-that is, whether [she] would have had no choice but to resign." *Id.* (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)). A claim for constructive discharge, however, "requires more facts and worse conduct" than a simple claim for discrimination. *Devine v. Prudential Ins. Co. of Am.*, No. 03-3971, 2007 WL 1875530, at *25 (D.N.J. June 28, 2007). Here, Plaintiff has not established enough facts and conduct to support her other gender discrimination claims, thus her gender discrimination claim based on a constructive discharge theory also must fail.

---

[7] *See, e.g.*, *Atkinson v. N.J. Developmental Ctr.*, No. 06-5485, 2010 WL 3947530, at *5 (D.N.J. Oct. 5, 2010), *aff'd sub nom.*, 453 F. App'x 262 (3d Cir. 2011) (finding reduction in job duties did not constitute adverse employment action); *Mickens v. Lowe's Cos., Inc.*, No. 07-6148, 2009 WL 4911952, at *6 (D.N.J. Dec. 14, 2009) ("a mere negative evaluation does not constitute an adverse employment action"); *Clayton v. Pa. Dep't of Pub. Welfare ex. rel. Richman*, No. 05-0768, 2007 WL 575677, at *10-11 (M.D. Pa. Feb. 20, 2007), *aff'd sub nom.*, 304 F. App'x 104 (3d Cir. 2008) (the denial or reduction of a bonus, especially when it is within the standards or protocols of the employer, is not an adverse employment action).

As Plaintiff has not brought forth sufficient facts to establish that she suffered an adverse employment action, the third prong of her *prima facie* case, Defendants' motion for summary judgment with respect to Plaintiff's gender discrimination claims under Title VII and the NJLAD will be granted.

### F. Retaliation Claims under the FMLA[8]

In her Amended Complaint, Plaintiff alleges that Defendants retaliated against her for purposes of the FMLA by (1) "demoting her in terms of job duties, pay and title after she took her FMLA leave" and (2) "refus[ing] [her] the opportunity to secure alternative employment." (Am. Compl. ¶¶ 76, 79.) The same framework used in discrimination cases brought under Title VII and the NJLAD applies to claims under the retaliation theory of the FMLA. *See Parker v. Hanhemann Univ. Hosp.*, 234 F. Supp. 2d 478, 488 (D.N.J. 2002).

#### 1.   *Direct Evidence of Retaliation under the FMLA*

Plaintiff argues that direct evidence exists of Defendants' retaliation against her for taking FMLA leave. First, Plaintiff directs the Court to "the 2009 Eval[uation] written by Eagan, who explicitly states that [Plaintiff] had <u>not</u> achieved her objective for 2009 <u>because she was out on FMLA leave</u>" and "the Power Point slide prepared for the end of year review meeting [on which] Eagan wrote . . . that Kumar had <u>missed a deadline because she went out on FMLA leave</u>." (Pl.'s

---

[8] In her Complaint, Plaintiff asserts that "Defendants interfered with her federally protected right to take an FMLA leave in violation of that Act." (Am. Compl. ¶ 75.) Plaintiff's only claim of "interference" under the FMLA is the same as her claim for retaliation—"not being returned to the same job with the same opportunities for advancement." (Pl.'s Opp'n. 7.) Plaintiff's interference claim is identical to her retaliation claim, and premised on the same allegation. *See Yamamoto v. Panasonic Corp. of N. Am.*, No. 12-2352, 2013 WL 3356214, at *7 (D.N.J. July 2, 2013); *Beese v. Meridian Health Sys. Inc.*, No. 11-7505, 2014 WL 3519124, at *9 (D.N.J. July 16, 2014). As Plaintiff's retaliation and interference claims are duplicative, it is appropriate to dismiss the latter. *Id.* (citing *Lichtenstein v. Univ. of Pitt. Med. Ctr.*, 691 F.3d 294, 312 n.25 (3d Cir. 2012)). Accordingly, Defendants' motion for summary judgment as to Plaintiff's interference claim is granted.

Opp'n 16.)  Second, Plaintiff directs the Court to comments made by "employees that reflect direct bias against women who have children and plan on returning to work." *Id.* at 17-18.

As outlined above, remarks "by a non-decision maker . . . cannot be taken as direct evidence of discrimination." *Tingley-Kelley v. Trs. of Univ. of Pa.*, 677 F. Supp. 2d 764, 781 (E.D. Pa. 2010); *see also Walden v. Ga.-Pac. Corp.*, 126 F.3d 506, 521 (3d Cir. 1997) ("We have generally held that comments by those individuals outside of the decisionmaking chain are stray remarks, which, standing alone, are inadequate to support an inference of discrimination.").  The comments made by various employees of Defendants regarding biases against pregnant women and the choices they make regarding leave and returning to work do not constitute direct evidence of FMLA retaliation.  Plaintiff fails to establish that the comments were made by any employee within the chain of decision making regarding Plaintiff's employment and the comments alleged were not made directly about Plaintiff, but rather reflect general biases.  Thus, these remarks do not constitute direct evidence.

Plaintiff has demonstrated a genuine dispute of material fact as to whether the "downgrade" in her employment evaluation was carried out in retaliation for her FMLA leave.  The Court agrees with Plaintiff that the written evaluation and Power Point slides referring directly to Plaintiff's FMLA leave in connection with missed deadlines and unachieved objectives constitute direct evidence of discrimination by Defendants.  A factfinder could reasonably determine that the written comments indicate that Eagan placed substantial negative reliance on the fact that Plaintiff took FMLA leave in giving her a negative employment evaluation.   Plaintiff, however, has not asserted how these written comments create an issue of fact as to whether the subsequent employment decisions over an almost two-year period were causally related to Plaintiff's FMLA leave.

22

### 2. *Circumstantial Evidence of Retaliation under the FMLA*

Plaintiff also relies on circumstantial evidence to support her claim for retaliation under the FMLA. Where a plaintiff relies on circumstantial evidence of retaliation, retaliation claims, like Plaintiff's gender discrimination claims, are construed pursuant to the three part burden shifting framework set forth in *McDonnell Douglas*.

### a. Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of retaliation under the *McDonnell Douglas* framework, a plaintiff must bring forward evidence that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse [action], and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at 302.

As to the second element of the *prima facie* case for FMLA retaliation, an adverse action must be a "materially adverse" one, meaning that it "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (citing *Burlington Northern*, 548 U.S. at 68).[9] The threshold is lower for an adverse action for retaliation claims, than the standard for an adverse employment action for discrimination claims. *See Joseph v. N.J. Civil Serv. Comm'n*, No 10-3956, 2013 WL 6904088 (D.N.J. Dec. 31, 2013). Such a standard, however, does not encompass the mere "petty slights, minor annoyances, and simple lack of good manners" attendant to virtually all workplaces, because such circumstances cannot be expected to deter employees from exercising their FMLA rights.

---

[9] While both parties agree this is the appropriate standard in the context of a retaliation claim, it bears mention that the Third Circuit has never squarely held that the "materially adverse" standard applies in the context of an FMLA retaliation claim. The Third Circuit has suggested that, were it necessary to address the issue, it would so hold. *See Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 216 (3d Cir. 2013) (assuming "arguendo, that the *Burlington Northern* standard applies in the FMLA context); *DiCampli v. Korman Cmtys.*, 257 F. App'x 497, 500-01 (3d Cir. 2007) (applying the *Burlington Northern* standard to an FMLA claim without further discussion).

*See Burlington Northern*, 548 U.S. at 68.   "Instead, the Court, adopting the perspective of a reasonable person in the plaintiff's position, must consider all the circumstances of the particular case to determine whether this element has been satisfied."   *Incorvati v. Best Buy Co.*, No. 10-1939, 2013 WL 3283956, at * 4 (D.N.J. June 27, 2013).

With respect to the third element of Plaintiff's *prima facie* case, the Third Circuit has emphasized that when analyzing whether a plaintiff has established causation in a retaliation case, a court should ask whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).   In deciding a motion for summary judgment, "when viewing the sufficiency of the *prima facie* case, [the court's] role is not to act as fact finder.   Instead, we must consider the evidence taken in the light most favorable to the non-movant and determine whether [the plaintiff] can show the causation required."   *Abramson*, 260 F.3d at 289 (quoting *Farrell*, 206 F.3d at 286).

As to her FMLA retaliation claim, Plaintiff argues that: "(1) she invoked her rights to take an FMLA leave; (2) she suffered one or more adverse actions; and (3) the adverse action was causally related to the exercise of her FMLA rights." *Id.* at 7-8.   Defendant does not challenge the first element—that Plaintiff invoked her rights to FMLA-qualifying leave.

Plaintiff relies on the same alleged seven instances[10] of "adverse conduct" to establish both her FMLA retaliation claim and her gender discrimination claim.   Specifically, Plaintiff maintains that Defendants violated her rights by: (1) changing her job duties after her FMLA leave; (2) penalizing her in her 2009 Performance Evaluation; (3) layering another employee's job over

---

[10] Plaintiff also asserts that Defendants violated her rights by demoting her after her FMLA leave. This claim, however, has already been dismissed, *see infra* III. A. 2., as time-barred under the FMLA.

hers; (4) downgrading her potential ratings in 2010; (5) reducing her bonus in 2010; (6) denying her continued employment or a temporary position, and (7) constructive discharge[11] from Ethicon.[12] (Pl.'s Opp'n. 7-14, 30-40.)

As to the second element, Defendants argue that "Plaintiff's mere dissatisfaction with the level of her responsibilities is not proof of a materially adverse action." (Defs.' Reply 7.) Defendants, however, do not provide appropriate legal justification for this argument or factual support from the record. In addition, Defendants do not challenge any of the other instances that Plaintiff alleges are adverse actions. Defendants' limited argument is unpersuasive. It is undisputed that Plaintiff's job duties changed after she returned from her FMLA leave. Based on the record of this case, the Court is unable to determine, as a matter of law, that the change in Plaintiff's job duties after she returned from leave would or would not dissuade a reasonable worker from making or supporting a charge of discrimination.

Next, Defendants argue that Plaintiff cannot establish any causal connection between her return to work after her FMLA leave and the alleged adverse actions, because "timing alone is insufficient to establish a causal connection." (Defs.' Br. 29.) In support of this argument, Defendants rely on *Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003), in which the Third Circuit found that temporal proximity was not enough to establish a causal link when an employee was terminated three weeks after lodging her complaint. The Third Circuit held that in

---

[11] The standard a court applies to a constructive discharge theory under a discrimination claim in violation of the NJLAD is the same standard applied to a constructive discharge theory under a retaliation claim in violation of the FMLA. *See Tanganelli v. Talbots, Inc.*, 169 F. App'x 123, 127 (3d Cir. 2006). Thus, for the same reasons discussed above, *see supra* III. E. 2. a., Plaintiff's retaliation claim based on a constructive discharge theory also must fail.

[12] Plaintiff also lists "retaliation for lodging complaints" as adverse conduct. However, she does not address how it relate to her retaliation claim under the FMLA and it is addressed separately as its own claim. *See* III. G.

such cases "where the temporal proximity is not so close as to be unduly suggestive, we have recognized that timing plus other evidence may be an appropriate test." *Id.* at 14 (internal quotations omitted).

The Court finds that for purposes of Plaintiff's *prima facie* case, the necessary causal link is supplied by the temporal proximity between Plaintiff's FMLA leave and Defendants' adverse action against Plaintiff, combined with Plaintiff's evidence of ongoing antagonism. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). Plaintiff returned from FMLA leave on January 18, 2010. Less than a month after she returned from her FMLA leave, Plaintiff received a negative performance evaluation, the drafts of which directly mentioned her FMLA leave. As such, Plaintiff's 2009 Performance Evaluation is direct evidence of retaliation. Plaintiff alleges that over the course of the next several months Defendants started taking away job duties from her. Plaintiff further alleges that within a few months of her return, Defendants created a new position and layered it over her position, listing job duties Plaintiff had performed prior to her FMLA leave. As such, the Court finds that this is an instance where the short time span between Plaintiff's protected FMLA leave and the allegedly retaliatory acts (change in job duties, Plaintiff's 2009 Performance Evaluation, and layering another employee's job duties over hers) combined with the direct evidence of retaliation is "unduly suggestive" of retaliation. Furthermore, these instances taken together establish an ongoing antagonism after her return from FMLA leave.

As for the additional adverse actions alleged by Plaintiff (downgrading her potential ratings in 2010; reducing her bonus in 2010; and denying her continued employment or a temporary position at J & J Consumer), the Court cannot find the same temporal proximity or evidence gleaned from the record as a whole in which the trier of fact could infer causation. Plaintiff's potential rating was not "downgraded" until approximately six or seven months after her FMLA

leave, the alleged reduction in Plaintiff's 2010 bonus occurred approximately one year after her FMLA leave, and Plaintiff was allegedly denied continued employment or a temporary position at J & J Consumer a year and a half after taking her FMLA leave and while at Ethicon.  As Plaintiff has not established a causal connection between her FMLA leave and the adverse actions regarding downgrading Plaintiff's potential ratings in 2010 (Pl.'s Opp'n 13); reducing Plaintiff's bonus in 2010 (*id.* at 13-14); and denying her continued employment or a temporary position at J & J Consumer (*id.* at 14), the third prong of the *prima facie* case, Defendants' motion for summary judgment as to these alleged adverse actions in support of Plaintiff's retaliation claims under the FMLA will be granted.

### b.  Defendants' Legitimate, Non-Discriminatory Reasons

A reasonable fact-finder could find that Plaintiff has established a *prima facie* case of retaliation with regard to the following allegations: (1) changing Plaintiff's job duties after her FMLA leave; (2) penalizing Plaintiff in her 2009 Performance Evaluation; and (3) layering another employee's job over Plaintiff's job.  Under step two of the *McDonnell Douglas* framework, where the plaintiff establishes a *prima facie* case, a presumption arises that the employer unlawfully discriminated against the employee, shifting the burden of production to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802.  An employer's burden to offer a legitimate, non-discriminatory reason for taking the adverse employment action with respect to the employee is a relatively light one. *Fuentes*, 32 F.3d at 763; *see also Constant v. Mellon Fin. Corp.*, 247 F. App'x 332, 337 (3d Cir. 2007) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (describing the employer's burden to adduce a legitimate, nondiscriminatory reason as being "one of production, not persuasion")).

Here, Defendants assert that while Plaintiff was out on FMLA leave "a new manager was hired who implemented a series of changes that affected numerous employees, including [P]laintiff" at Ethicon. (Defs.' Br. 29.) Defendants further contend that Plaintiff was not qualified for the position she asserts was layered over her position, and thus, "[n]o further inquiry is required." *Id.* Defendants' assertion is supported by evidence in the record that satisfies Defendants' relatively light burden of production under *McDonnell Douglas*.

    c.   <u>Pretext</u>

Under the third prong of *McDonnell Douglas*, once the employer articulates a legitimate, non-discriminatory reason, "the employee must establish pretext by offering evidence from which a reasonable factfinder could either '(1) mistrust the employer's articulated genuine reasons; or (2) believe that a discriminatory reason was likely a motivating or determinative factor of the employer's action.'" *Moore v. City of Camden*, No. 10-3044, 2013 WL 1903300, at *5 (D.N.J. May 7, 2013) (citing *Naber v. Dover Healthcare Assocs. Inc.*, 473 F. App'x 157, 160 (3d Cir. 2012)). The necessary evidence may consist of the evidence submitted by the plaintiff in the *prima facie* case, as well as additional evidence rejecting the employer's legitimate nondiscriminatory reason as pretextual. *See Fuentes*, 32 F.3d at 764.

In the instant matter, Defendants claim the "adverse actions"—changing Plaintiff's job duties after her FMLA leave, penalizing Plaintiff in her 2009 Performance Evaluation, and layering another employee's job over Plaintiff's job—occurred because a new manager implemented restructuring changes when Plaintiff returned from her leave and Plaintiff was never qualified for the job that was "layered" over hers. Defendants fail, however, to proffer any legitimate, nondiscriminatory reason for why Plaintiff was penalized in her 2009 Performance Evaluation for taking FMLA leave. Additionally, Plaintiff asserts that Defendants disregarded usual protocols in

hiring Vitt. (Pl.'s Opp'n. 20.) Whether or not Plaintiff was qualified for the newly created position is irrelevant in determining whether that position was "layered" over her current position and taking her job duties and responsibilities prior to her FMLA leave away from her. Furthermore, viewing the evidence in the light most favorable to Plaintiff, the Court must conclude that Plaintiff adduced sufficient evidence that a reasonable fact finder could mistrust Defendants' asserted reasons for the adverse actions or find those reasons unworthy of credence. Summary judgment, therefore will be denied with respect to Plaintiff's retaliation claim under the FMLA.

### G. Retaliation Claims under Title VII, the NJLAD, and the FMLA

In her Amended Complaint, Plaintiff alleges that "she was terminated from J & J Consumer as a result of complaining about her gender discrimination." (Am. Compl. ¶ 80.) Specifically, Plaintiff asserts she was "retaliated against for complaining to Common Ground, pursuant to Title VII, the NJLAD, and the FMLA" and her "retaliation claim is based on her termination from" J & J Consumer. (Pl.'s Opp'n 31.) Plaintiff's claims of retaliation are subject to the same *McDonnell Douglas* burden shifting framework.

Here, however, even if the Court assumes Plaintiff can establish her *prima facie* case of retaliation, Defendants assert that J & J Consumer did not know of Plaintiff's previous FMLA leave at Ethicon. In addition, Defendants offered Plaintiff a position after an organizational restructuring, which Plaintiff did not accept. Plaintiff has not brought forth sufficient evidence to rebut Defendants' legitimate, nondiscriminatory reasons for Plaintiff's termination. Plaintiff admits she did not accept the job offered to her by Defendants, but instead argues she should have been allowed to remain temporarily employed by Defendants while searching for a different job within the Johnson & Johnson family of companies. Plaintiff has not offered any legal support for this claim. As such, Defendants' motion for summary judgment as to Plaintiff's retaliation claims

based on her complaints of gender discrimination under Title VII, the NJLAD, and the FMLA will be granted.

**IV.      Conclusion**

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' Motion for Summary Judgment is DENIED with respect to Plaintiff's retaliation claim based on:   (1) changing Plaintiff's job duties after her FMLA leave; (2) penalizing Plaintiff in her 2009 Performance Evaluation; and (3) layering another employee's job over Plaintiff's job in violation of the FMLA.   It is further ordered that Defendants' Motion for Summary Judgment is GRANTED with respect to all other claims in Plaintiffs' Amended Complaint.

**Michael A. Shipp**
**United States District Judge**

**Dated:** October 31st, 2014